U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    JAN 1 0 2005

LORETTA G. WHYTE
CLERK

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

December 17, 2004

Charles R. Fulbruge III
Clerk

---

No. 03-30702

---

D.C. Docket No. 02-CV-425-A

POSITIVE BLACK TALK INC, doing business as Take Fo' Records,
doing business as Take Fo' Publishing

        Plaintiff - Appellee

   v.

CASH MONEY RECORDS INC; ET AL

        Defendants

CASH MONEY RECORDS INC; UMG RECORDINGS INC, Universal Records,
Inc;
UNIVERSAL MUSIC AND VIDEO DISTRIBUTION CORP; TERIUS GRAY, also
known
as Juvenile

        Defendants - Appellants

    Appeal from the United States District Court for the
      Eastern District of Louisiana, New Orleans.

Before KING, Chief Judge, and SMITH and GARZA, Circuit Judges.

J U D G M E N T

    This cause was considered on the record on appeal and was
argued by counsel.

    It is ordered and adjudged that the judgment of the District
Court is affirmed.

    IT IS FURTHER ORDERED that defendants-appellants pay to
plaintiff-appellee the costs on appeal to be taxed by the Clerk
of this Court.

ISSUED AS MANDATE: JAN 1 0 2005

___ Fee ___
___ Process ___
_X_ Dktd ___
___ CtRmDep ___
___ Doc. No. 226

A true copy
Test:
Clerk, U.S. Court of Appeals, Fifth Circuit

By_____
           Deputy
New Orleans, Louisiana JAN 1 0 2005

United States Court of Appeals
Fifth Circuit

# F I L E D

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**December 17, 2004**

Case No. 03-30625

*CV  02-425 A*

Charles R. Fulbruge III
Clerk

POSITIVE BLACK TALK INC, doing business as Take Fo'
Records, doing business as Take Fo' Publishing

                    Plaintiff - Counter Defendant - Appellant

v.

CASH MONEY RECORDS INC; ET AL

                    Defendants

CASH MONEY RECORDS INC; TERIUS GRAY, also known as Juvenile

                    Defendants - Counter Claimants - Appellees

          and

UMG RECORDINGS INC, Universal Records Inc merged into UMG
Recordings Inc; UNIVERSAL MUSIC AND VIDEO DISTRIBUTION CORP;

                    Defendants - Appellees

No. 03-30702

POSITIVE BLACK TALK INC, doing business as Take Fo' Records,
doing business as Take Fo' Publishing

                    Plaintiff - Appellee

v.

CASH MONEY RECORDS INC; ET AL

                    Defendants

CASH MONEY RECORDS INC; UMG RECORDING INC, Universal
Records, Inc; UNIVERSAL MUSIC AND VIDEO DISTRIBUTION CORP;
TERIUS GRAY, also known as Juvenile

                    Defendants-Appellants

---

Appeals from the United States District Court
for the Eastern District of Louisiana

---

Before KING, Chief Judge, and SMITH and GARZA, Circuit Judges.

KING, Chief Judge:

This appeal arises out of a dispute concerning the popular rap song <u>Back That Azz Up</u>.  Plaintiff-Appellant Positive Black Talk, Inc. filed this lawsuit against three defendants, alleging, inter alia, violations of the United States copyright laws.  The defendants counterclaimed under the copyright laws, the Louisiana Unfair Trade Practices Act, and theories of negligent misrepresentation.  After a jury trial, the district court entered judgment in accordance with the verdict in favor of the defendants on all of Positive Black Talk's claims, as well as on the defendants' non-copyright counterclaims.  The district court awarded the defendants attorney's fees only in relation to the successful unfair trade practices counterclaim.

In this consolidated appeal, Positive Black Talk appeals the judgment of the district court on the grounds that the court erred in instructing the jury and in making several evidentiary rulings.  The defendants appeal the district court's decision not to award them attorney's fees as the prevailing parties on Positive Black Talk's copyright infringement claim.  We AFFIRM.

**I. Factual and Procedural Background**

2

In 1997, two rap artists based in New Orleans, Louisiana--
Terius Gray, professionally known as Juvenile ("Juvenile"), and
Jerome Temple, professionally known as D.J. Jubilee ("Jubilee")--
each recorded a song that included the poetic four-word phrase
"back that ass up."  Specifically with respect to Jubilee, he
recorded his song in November 1997 and entitled it Back That Ass
Up.  In the Spring of 1998, Positive Black Talk, Inc. ("PBT"), a
recording company, released Jubilee's Back That Ass Up on the
album TAKE IT TO THE ST. THOMAS.  Jubilee subsequently performed the
song at a number of live shows, including the New Orleans
Jazzfest on April 26, 1998.

Turning to Juvenile, at some point during the fall of 1997,
Juvenile recorded his song and entitled it Back That Azz Up.  In
May 1998, Cash Money Records, Inc. ("CMR"), the recording company
that produced Juvenile's album 400 DEGREEZ, signed a national
distribution contract with Universal Records.  Consequently, 400
DEGREEZ, which contained Juvenile's song Back That Azz Up, was
released in November 1998.  400 DEGREEZ quickly garnered national
acclaim, selling over four million albums and grossing more than
$40 million.

In 2000, Jubilee applied for and received a certificate of
registration (Form PA) from the United States Copyright Office
for the lyrics of Back That Ass Up.  Jubilee also obtained a
certificate of registration for the lyrics and music (Form SR) in

3

the sound recording of the song. On February 15, 2002, PBT mailed a supplementary application for registration (containing an application, deposit, and fee) to the Copyright Office, stating that PBT should have been listed as the author and copyright claimant on Jubilee's prior PA registration (lyrics only). On the same day, PBT filed this lawsuit in the Eastern District of Louisiana, alleging copyright infringement and the violation of the Louisiana Unfair Trade Practices Act (LUPTA).[1] On February 19, 2002, four days after the suit was filed, the Copyright Office received PBT's supplementary registration application.

In response, the defendants filed counterclaims, alleging copyright infringement, violation of LUPTA, and negligent misrepresentation. On February 11, 2003, the defendants filed a motion for summary judgment, in which they argued, inter alia, that the district court should dismiss PBT's lawsuit for lack of subject matter jurisdiction because PBT failed to comply with the statutory requirement that the Copyright Office receive the registration application before a plaintiff may file an

---

[1] PBT named as defendants Juvenile and CMR, as well as several entities affiliated with Universal Records (collectively, "Universal"). Juvenile and CMR are represented together by counsel, who submitted a single set of briefs on behalf of the two parties. Universal is represented independently and submitted a separate set of briefs. For the purposes of clarity and convenience, we refer to these parties collectively as the "defendants."

infringement suit.  The district court denied the motion,
reasoning that the defect had been cured and that dismissing the
case after a year of litigation, only to have PBT re-file the
suit, would be a tremendous waste of judicial resources.

In May 2003, the case proceeded to a jury trial.  Although
the jury found that PBT proved by a preponderance of the evidence
that it owned a copyright interest in the lyrics and music of
Jubilee's song Back That Ass Up, it nevertheless found in favor
of the defendants on PBT's copyright infringement claim.
Specifically, the jury found that: (1) PBT failed to prove that
Juvenile or CMR factually copied Back That Ass Up; (2) the
defendants proved that CMR and Juvenile independently created
Back That Azz Up; and (3) PBT failed to prove that Back That Azz
Up is substantially similar to Back That Ass Up.[2]  The jury also
decided against PBT on its non-copyright claim.  In addition, the
jury found in favor of the defendants on their LUPTA and
negligent misrepresentation counterclaims.  However, the jury
found against the defendants on their copyright infringement

_____

[2]  The defendants also argued at trial (and defend the
verdict on appeal on the ground) that PBT's infringement claim
fails for the reason that the phrase "back that ass up" cannot be
copyrighted. This is so, according to the defendants' argument,
because the phrase is not original and because the merger
doctrine precludes extending protection to a phrase that is
necessary to describe a particular thing--in this case, a dance
move.  However, the jury did not reach these issues because it
was instructed not to make any findings on those points once they
resolved factual copying and independent creation in favor of the
defendants.  We therefore do not address these claims.

counterclaim.  Accordingly, the district court entered judgment in favor of the defendants.  The court awarded the defendants attorney's fees in relation their LUPTA counterclaim but not for their successful defense of PBT's copyright infringement claim.

PBT then filed a timely notice of appeal.  PBT argues on appeal that the district court erroneously instructed the jury on relevant copyright laws and erred in making several evidentiary rulings.[3]  The defendants cross-appeal the district court's award of attorney's fees, contending that they are entitled to fees for prevailing against PBT on its copyright claim.[4]

## II. Subject Matter Jurisdiction

The district court's subject matter jurisdiction was based on 28 U.S.C. §§ 1331 (federal question) and 1338 (copyright laws).  That broad underlying jurisdiction was supplemented by the specific statutory provisions of the copyright laws.  Specifically, 17 U.S.C. § 411(a) sets forth the jurisdictional prerequisite that "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title."

---

[3]  PBT does not appeal the district court's adverse judgment on either its own LUPTA claim or the defendants' LUPTA counterclaim.

[4]  The defendants cross-appeal neither the judgment relating to their copyright infringement counterclaim nor the jury's finding that PBT has a valid copyright interest in Back That Ass Up.

6

17 U.S.C. § 411(a) (2000); see also Creations Unlimited, Inc. v. McCain, 112 F.3d 814, 816 (5th Cir. 1997) (per curiam) ("registration with the copyright office is a jurisdictional prerequisite to filing a copyright infringement suit"). Although some circuits require that a plaintiff actually obtain a certificate from the Copyright Office before bringing suit, the Fifth Circuit requires only that the Copyright Office actually receive the application, deposit, and fee before a plaintiff files an infringement action. See Lakedreams v. Taylor, 932 F.2d 1103, 1108 (5th Cir. 1991). Here, the defendants argue that PBT failed to comply with the statutory formality set forth in § 411 (and that the district court therefore lacked jurisdiction over PBT's copyright infringement claim) because PBT filed suit four days before the Copyright Office received its application, deposit, and fee (all of which PBT had mailed on the same day it filed suit).[5]

---

[5] This argument was originally advanced by the defendants in a motion for summary judgment that the district court denied. We review challenges to a district court's jurisdiction de novo. Shepard v. Int'l Paper Co., 372 F.3d 326, 329 (5th Cir. 2004). However, the defendants do not cross-appeal the district court's denial of their motion for summary judgment. Nevertheless, the jurisdiction argument was raised again in the brief of CMR and Juvenile. In response, PBT filed a motion to strike these portions of CMR and Juvenile's brief on the ground that they did not file a cross-appeal on that ruling. However, we would have considered the question of subject matter jurisdiction sua sponte in the absence of such briefing. See Hill v. City of Seven Points, 230 F.3d 167, 169 (5th Cir. 2000) (recognizing that the court must, if necessary, consider its subject matter jurisdiction on its own motion). Thus, PBT's motion is

7

We hold, along with the other courts that have considered this matter, that the ultimate judgment is not rendered a nullity in this instance by the district court's refusal to dismiss PBT's suit for want of jurisdiction. Rather, we find that the jurisdictional defect was cured when the Copyright Office received PBT's application, deposit, and fee four days after PBT filed suit.

A number of other courts have found that a plaintiff who files a copyright infringement lawsuit before registering with the Copyright Office may cure the § 411 defect by subsequently amending or supplementing its complaint once it has registered the copyright. See, e.g., M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1488-89 (11th Cir. 1990); J. Racenstein & Co., Inc. v. Wallace, 1997 WL 605107, *1-2 (S.D.N.Y. Oct. 1, 1997) ("Where an action is commenced without registration being effected, the defect can be cured by subsequent registration, and an appropriate amendment to the complaint may be made to provide the necessary basis for subject matter jurisdiction.");

---

functionally irrelevant with respect to the jurisdictional question. However, to the extent that CMR and Juvenile argue that PBT still has no valid copyright in Back That Ass Up, PBT is correct that the issue is not properly before this court because: (1) the jury found otherwise; (2) CMR and Juvenile did not file a cross-appeal; and (3) deciding the matter against PBT would "lessen[] the rights of [PBT]." See El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 479 (1999). Thus, although we deny PBT's motion to strike portions of CMR and Juvenile's brief, we do not consider the defendants' argument that PBT's copyright is invalid.

8

ISC-Bunker Ramo Corp. v. Altech, Inc., 765 F. Supp. 1308, 1309 (N.D. Ill. 1990); Haan Crafts Corp. v. Craft Masters, Inc., 683 F. Supp. 1234, 1242 (N.D. Ind. 1988); Frankel v. Stein and Day, Inc., 470 F. Supp. 209, 212 (S.D.N.Y. 1979). The notion that the supplemental pleading cures the technical defect, notwithstanding the clear language of § 411, is consistent with the principle that technicalities should not prevent litigants from having their cases heard on the merits.[6] See 28 U.S.C. § 1653 (2000) (allowing defective allegations of jurisdiction to be amended in the trial or appellate courts); see also Haan Crafts Corp., 683 F. Supp. at 1242.

---

[6] Our conclusion is not undermined by Harris v. Garner, 216 F.3d 970 (11th Cir. 2000) (en banc), in which the Eleventh Circuit held that prisoners who file lawsuits may not supplement their pleadings after their release to cure noncompliance with § 1997e(e) of the Prison Litigation Reform Act (PLRA). Although § 1997e(e) prohibits prisoners from bringing a civil action while in custody without a showing of physical injury, the plaintiffs in Harris filed suit, while still in prison, for non-physical injury and then attempted to supplement their complaint after their release to cure the § 1997e(e) defect. The Harris court, strictly limiting its holding to prisoner cases, found that the district court lacked jurisdiction because the plaintiffs were prisoners at the time they filed the lawsuit and no supplement could change that historical fact to cure the § 1997e(e) defect. 216 F.3d at 982-84. Crucial to the Harris court's analysis was its view that allowing a cure of the jurisdictional defect would run contrary to the central congressional purpose in enacting the PLRA, which was to reduce the number of prison lawsuits filed by incarcerated prisoners who face little opportunity costs when filing a lawsuit while in prison. Id. at 982-83. Thus, the logic of Harris is inapplicable here because nothing suggests that Congress viewed the pre-filing requirement in § 411 as central to the purpose of the federal copyright laws. Cf. 2 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 7.16[B][1][b][iii], at 7-164 (2004) [hereinafter NIMMER].

9

PBT did not amend its complaint in the court below. Nevertheless, the Supreme Court has held, albeit in a non-copyright case, that failure to amend a complaint in the district court is no bar to finding a jurisdictional defect cured. <u>See</u> <u>Mathews v. Diaz</u>, 426 U.S. 67, 73-76 (1976). In <u>Diaz</u>, the Supreme Court upheld subject matter jurisdiction over a case in which the plaintiff had not complied with a statutory formality requiring him to file an application with the Secretary of Health, Education, and Welfare before instituting a lawsuit. <u>Id.</u> The <u>Diaz</u> Court stated:

> We have little difficulty with Espinosa's failure to file an application with the Secretary until after he was joined in the action. Although 42 U.S.C. § 405(g) establishes filing of an application as a nonwaivable condition of jurisdiction, Espinosa satisfied this condition while the case was pending in the District Court. A supplemental complaint in the District Court would have eliminated this jurisdictional issue; since the record discloses, both by affidavit and stipulation, that the jurisdictional condition was satisfied, it is not too late, even now, to supplement the complaint to allege this fact. Under these circumstances, we treat the pleadings as properly supplemented by the Secretary's stipulation that Espinosa had filed an application.

<u>Id.</u> at 75 (internal citations and footnotes omitted). Similarly, we consider PBT's noncompliance with § 411 to be cured, even though it did not file a supplemental complaint below.

Our conclusion that subject matter jurisdiction existed in this case is also consistent with the Supreme Court's decision in <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61 (1996). In <u>Caterpillar</u>, a

10

unanimous Supreme Court held that a procedural-jurisdictional
defect under 28 U.S.C. § 1441, which requires complete diversity
at the time of removal, had been cured when the non-diverse party
dropped out of the case after removal but before trial commenced.
519 U.S. at 73-75.  The Court recognized that § 1441's
requirement that complete diversity exist at the time of removal
was not satisfied because the case was removed before the non-
diverse party dropped out.  However, the Court found that the
§ 1441 defect should be excused--even though the "statutory flaw
. . . remained in the unerasable history of the case"--because:
(1) complete diversity jurisdiction ultimately existed before
judgment and (2) the case had already proceeded to judgment,
making "considerations of finality, efficiency, and economy . . .
overwhelming."  Id.; see also Grupo Dataflux v. Atlas Global
Group, 124 S.Ct. 1920, 1924-28 (2004) (reemphasizing that the
Court's holding in Caterpillar pertained to curing a statutory
procedural-jurisdictional defect under § 1441).

     The Court's reasoning in Caterpillar applies to PBT's
copyright infringement lawsuit because 28 U.S.C. § 1441 and 17
U.S.C. § 411 both have a substantive requirement as well as a
timing requirement.  Section 1441 substantively requires complete
diversity, which must exist at the time of removal.  In
Caterpillar, although the substantive requirement of complete
diversity was ultimately satisfied, the timing requirement was

11

not.  However, because of judicial economy and finality concerns,
the Court excused the failure to comply with the timing element
of the statute.  Similar to the removal statute at issue in
Caterpillar, § 411 has a substantive component and a timing
component--it requires the filing of a registration application,
which must occur prior to the institution of the suit.  As in
Caterpillar, the substantive requirement here was satisfied
(because PBT filed a registration application, deposit, and fee),
but the timing element was not (because the Copyright Office
received the materials after PBT filed suit).  Thus, Caterpillar
suggests that because PBT satisfied the substantive requirement
of § 411 before final judgment, "considerations of finality,
efficiency, and economy" counsel us to disregard the technical
defect in timing in this particular case.  Caterpillar Inc., 519
U.S. at 75.  Accordingly, the § 411 defect was cured, and subject
matter jurisdiction existed.

### III.  Jury Instructions on Copyright Law

### A.  Elements of Copyright Infringement

To establish a claim for copyright infringement, a plaintiff
must prove that: (1) he owns a valid copyright and (2) the
defendant copied constituent elements of the plaintiff's work
that are original.  Gen. Universal Sys. v. Lee, 379 F.3d 131, 141
(5th Cir. 2004); Szabo v. Errisson, 68 F.3d 940, 942 (5th Cir.
1995) (citing Apple Barrel Prods., Inc. v. Beard, 730 F.2d 384,

12

387 (5th Cir. 1984)). To establish actionable copying (i.e., the second element), a plaintiff must prove: (1) factual copying and (2) substantial similarity. <u>Bridgmon v. Array Sys. Corp.</u>, 325 F.3d 572, 576 (5th Cir. 2003). Factual copying "can be proven by direct or circumstantial evidence." <u>Id.</u> "As direct evidence of copying is rarely available, factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity."[7] <u>Peel & Co. v. Rug Market</u>, 238 F.3d 391, 394 (5th Cir. 2001). If a plaintiff establishes an inference of factual copying (by showing access and probative similarity), the

---

[7] This circuit adopted the term probative similarity in <u>Engineering Dynamics, Inc. v. Structural Software, Inc.</u>, 26 F.3d 1335, 1340 & n.4 (5th Cir. 1994), which credits Professor Alan Latman with originating the term to resolve the confusion resulting from many courts' double use of "substantial similarity" to describe both the similarity needed to prove factual copying (i.e., what we term "probative similarity") and the similarity needed to prove that the copying is legally actionable (i.e., what we term "substantial similarity"). <u>See also</u> Alan Latman, <u>"Probative Similarity" as Proof of Copying: Toward Dispelling Some Myths in Copyright Infringement</u>, 90 COLUM. L. REV. 1187 (1990). A number of other circuits, including the First, Second, Third, Tenth, and Eleventh, have also adopted the term "probative similarity." <u>See e.g.</u>, <u>Dam Things From Denmark v. Russ Berrie & Co., Inc.</u>, 290 F.3d 548, 562 & n.19 (3d Cir. 2002); <u>Transwestern Pub. Co. v. LP Multimedia Mktg. Assocs., Inc.</u>, 133 F.3d 773, 775 (10th Cir. 1998); <u>Ringgold v. Black Entertainment Television, Inc.</u>, 126 F.3d 70, 75 (2d Cir. 1997); <u>Bateman v. Mnemonics, Inc.</u>, 79 F.3d 1532, 1541 (11th Cir. 1996); <u>Lotus Dev. Corp. v. Borland Int'l, Inc.</u>, 49 F.3d 807, 813 (1st Cir. 1995). The Ninth Circuit, among others, still uses "substantial similarity" to describe the similarity needed for factual copying as well as legally actionable copying. <u>See, e.g.</u>, <u>Swirsky v. Carey</u>, 376 F.3d 841, 844-45 (9th Cir. 2004).

defendant can rebut that inference, and thus escape liability for infringement, if he can prove that he independently created the work. Id. at 398; Miller v. Universal Studios, Inc., 650 F.2d 1365, 1375 (5th Cir. 1981). If a plaintiff has established factual copying (and the defendant does not establish independent creation), the plaintiff must also prove that the copyrighted work and the allegedly infringing work are substantially similar. Bridgmon, 325 F.3d at 577.

## B. Standard of Review

PBT argues that the district court erred in instructing the jury with respect to probative similarity, substantial similarity, and independent creation. Where the challenging party failed to preserve the error with proper objections, we review the district court's jury instructions only for plain error. Russell v. Plan Bank & Trust, 130 F.3d 715, 719-21 (5th Cir. 1997). The defendants argue that PBT did not preserve any alleged error because PBT did not make specific, on-the-record objections to the instructions in question. PBT counters that it made general objections to the instructions on the record, and that it made more specific objections off the record during a conference in chambers.

We agree with the defendants that PBT failed to preserve the error with respect to the jury instructions. See FED. R. CIV. P. 51(c)(1) ("A party who objects to an instruction or the failure

14

to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection."). First, PBT's on-the-record objections pertained only to the instructions as a whole, rather than indicating specific objections, and therefore failed to comply with Rule 51. See Russell, 130 F.3d at 719-20 ("We have repeatedly held that a general objection to the district court's jury instructions is insufficient to satisfy Rule 51."). Second, PBT's off-the-record objections, regardless of how specific, cannot satisfy Rule 51's requirements. See id. at 720 n.2 ("Obviously, we cannot consider off-the-record objections to jury instructions not subsequently made part of the record . . . ." (quoting King v. Ford Motor Co., 597 F.2d 436, 440 n.3 (5th Cir. 1979))). Thus, PBT did not preserve the error, and we review the jury instructions for plain error.

For PBT to prevail under the plain error standard, it must show "that the instructions made an obviously incorrect statement of law that was 'probably responsible for an incorrect verdict, leading to substantial injustice.'" Hernandez v. Crawford Bldg. Material, 321 F.3d 528, 531 (5th Cir. 2003) (quoting Tompkins v. Cyr, 202 F.3d 770, 784 (5th Cir. 2000)). Moreover, "[i]n reviewing jury instructions for plain error, we are exceedingly deferential to the trial court." Tompkins, 202 F.3d at 784.

**C.  Factual Copying**

15

### 1.   Definition of Probative Similarity

PBT first argues that the district court erroneously instructed the jury with respect to the definition of "probative similarity." The court instructed that: "Probative similarity means that the songs, when compared as a whole, demonstrate that Juvenile or CMR appropriated Jubilee's song." PBT avers that this definition is misleading because, by including the phrase "when compared as a whole," it suggests that the jury, when deciding whether factual copying occurred, must look to see whether <u>Back That Ass Up</u>, as a whole, is sufficiently similar to <u>Back That Azz Up</u>, as a whole. As PBT points out, however, probative similarity requires only that certain parts of the two works are similar, such that the jury may infer factual copying in light of the defendant's access to the plaintiff's work. Regardless, PBT's claim fails for at least three reasons.

First, we cannot say that the jury instruction on probative similarity is "an obviously incorrect statement of law." <u>Hernandez</u>, 321 F.3d at 531. The definition of probative similarity in the jury instruction is taken directly from a Fifth Circuit case. <u>See</u> <u>Peel & Co.</u>, 238 F.3d at 397 ("The second step in deciding whether Peel has raised a genuine issue of material fact regarding factual copying . . . requires determining whether the rugs, <u>when compared as a whole</u>, are adequately similar to establish appropriation." (emphasis added)). Accordingly, PBT

16

did not show plain error because the definition of probative similarity was not "obviously incorrect." Hernandez, 321 F.3d at 531.

We note that the district court's reliance on Peel to define probative similarity is understandable given that other Fifth Circuit opinions offer little additional guidance on the question. Peel is undoubtedly correct inasmuch as it instructs that the ultimate issue with respect to probative similarity is whether the similarities between the two works suggest that the later-created work was factually copied. Peel should not be read to suggest that a jury may draw an inference of factual copying only if the whole of the defendant's work largely replicates the whole of the allegedly-copied work.[8]  Rather, the "when compared as a whole" language in Peel regarding probative similarity means that the jury must consider the whole of the first work (including both copyrightable and non-copyrightable parts) and the whole of the second work and then compare the two works, looking for any similarities between their constituent parts. This reading of Peel is not inconsistent with any Fifth Circuit precedent and is consistent with other courts' conceptualizations

---

[8]  Indeed, such an interpretation would lead to unreasonable results, such as where one author includes an entire chapter in his book that replicates verbatim another author's book but then argues that the jury cannot infer factual copying on the grounds that, because the other twenty chapters are not similar, the two works are not probatively similar.

of probative similarity.  See, e.g., Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 832 n.7 (10th Cir. 1993); O.P. Solutions, Inc. v. Intellectual Prop. Network, Ltd., No. 96-Civ.7952, 1999 WL 47191, at *3 (S.D.N.Y. Feb. 2, 1999).[9]

In order to avoid confusion, a district court should explain that the purpose of the probative similarity inquiry is to determine whether factual copying may be inferred and that this inquiry is not the same as the question of substantial similarity, which dictates whether the factual copying, once established, is legally actionable.  See Eng'g Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335, 1340 & n.4 (5th Cir. 1994) (adopting the term "probative similarity") (citing Alan

---

[9]  As the O.P. Solutions court explained:

When evaluating probative similarity, a court should compare the works in their entirety, including both protectable and unprotectable elements.  See Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 123 (2d Cir. 1994).  This is appropriate because although the plaintiff must ultimately establish infringement by showing that the defendant copied a substantial amount of protectable elements, (i.e., meet the "substantial similarity" standard), the fact that non-protectable elements were copied, although not a basis for liability, can be probative of whether protected elements were copied (i.e., help establish probative similarity).  See Gates Rubber, 9 F.3d at 832 n. 7 (explaining that failure to consider nonprotectable elements when evaluating question of actual copying deprives court of "probative, and potentially essential, information on the factual issue of copying").

1999 WL 47191, at *4.

18

Latman, "Probative Similarity" as Proof of Copying: Toward
Dispelling Some Myths in Copyright Infringement, 90 COLUM. L. REV.
1187 (1990)); see also Bridgmon, 325 F.3d at 576 & n.7, 577
(noting that "probative" and "substantial" similarity are
analytically distinct concepts). Along these lines, a jury may
find that two works are probatively similar if it finds any
similarities between the two works (whether substantial or not)
that, in the normal course of events, would not be expected to
arise independently in the two works and that therefore might
suggest that the defendant copied part of the plaintiff's work.
See Ringgold v. Black Entm't Television, Inc., 126 F.3d 70, 75
(2d Cir. 1997) ("[P]robative similarity[] requires only the fact
that the infringing work copies something from the copyrighted
work; . . . substantial similarity[] requires that the copying is
quantitatively and qualitatively sufficient to support the legal
conclusion that infringement (actionable copying) has
occurred."); 4 NIMMER § 13.01[B], at 13-12 ("[W]hen the question
is copying as a factual matter, then similarities that, in the
normal course of events, would not be expected to arise
independently in the two works are probative of defendant's
having copied as a factual matter from plaintiff's work.");
Latman, 90 COLUM. L. REV. at 1214 (noting that probative
similarities are "such similarities between the works which,
under all the circumstances, make independent creation

unlikely[;] [s]uch similarities may or may not be substantial. .
. . Rather, they are offered as probative of the act of copying .
. . .").

The second reason PBT's claim--that the language "when
compared as a whole" in the instruction on probative similarity
constituted reversible error--fails is because the district court
offered guidance to the jury that a finding of factual copying
only requires similarity between portions of the plaintiff's
work, not overall similarity.  For example, when the court first
introduced the element of factual copying (about ten sentences
before giving the instruction defining probative similarity), the
court stated, "[t]he first question, factual copying, asks
whether Juvenile and CMR actually copied constituent elements of
D.J. Jubilee's song in Juvenile's song Back That Ass Up."
(emphasis added).  The court also instructed the jury that: "If
you conclude that factual copying did occur, that is that
Juvenile/CMR copied parts of Jubilee's song Back That Ass Up,
[the defendants may still prevail if they demonstrate independent
creation]." (emphasis added).  Given these instructions, we
cannot agree that the definition of probative similarity of which
PBT complains was misleading in this particular instance.

Third, the jury's findings on independent creation and
substantial similarity negate any reasonable possibility that the
probative similarity instruction was "probably responsible for an

20

incorrect verdict."  Tompkins, 202 F.3d at 784 (citing Auto.
Group v. Cent. Garage, Inc., 124 F.3d 720, 730 (5th Cir. 1997)).
Even if the jury misunderstood its task in evaluating probative
similarity as a result of the instruction, it found that Juvenile
independently created Back That Azz Up and that the two songs are
not substantially similar.  Those findings prevent PBT from
recovering, regardless of the extent to which it proved factual
copying occurred.

## 2.  **Inverse Relationship Between Access and Probative Similarity**

PBT also complains that it requested an instruction on the
inverse relationship between the degree of access an alleged
infringer had to the original work and the degree of similarity
needed to show that copying actually occurred.  Specifically, PBT
asked that the jury be instructed that "PBT does not have to show
as much similarity when a high degree of access is shown."  The
defendants counter that this inverse-relationship doctrine is not
the law in the Fifth Circuit.  PBT's argument fails for several
reasons.

The defendants are correct that this circuit has not
expressly adopted the principle that there is an inverse
relationship between the requisite proof of access and
similarity, and there is no need to do so here.  However, this
doctrine finds support in other circuits.  See, e.g., Swirsky v.

21

Carey, 376 F.3d 841, 844-45 (9th Cir. 2004) ("Where a high degree
of access is shown, we require a lower standard of proof of
[probative] similarity."); Jorgensen v. Epic/Sony Records, 351
F.3d 46, 56 (2d Cir. 2003) ("There is an inverse relationship
between access and probative similarity such that the stronger
the proof of similarity, the less the proof of access is
required." (internal quotation marks omitted)); Tienshan v.
C.C.A. Int'l (N.J.), Inc., 895 F. Supp. 651, 656 (S.D.N.Y. 1995)
(noting: "given that access has been conceded, the level of
probative similarity necessary to show physical copying is
diminished"); see also 4 NIMMER § 13.03[D], at 13-79 ("[T]he
stronger the proof of similarity, the less the proof of access
that is required."). Thus, other courts have held that a
plaintiff who shows a high degree of similarity may satisfy the
factual copying requirement with a lesser showing of access,[10]
and, conversely, a plaintiff who shows a greater degree of access
may satisfy the factual copying element with a lesser degree of

---

[10]  In fact, a plaintiff may establish factual copying
without any proof of access "when the similarity between
plaintiff's and defendant's works is sufficiently striking such
that the trier of fact may be permitted to infer copying on that
basis alone."  4 NIMMER § 13.02[B], at 13-26 (footnotes omitted);
see also Jorgensen, 351 F.3d at 56.  However, this does not mean
that the reverse is true--i.e., that a plaintiff can establish
factual copying by overwhelming proof of access without some
showing of probative similarity.  See 4 NIMMER § 13.03[D].

22

probative similarity.[11]

Regardless, the fact that this circuit has not explicitly adopted this doctrine means that the district court did not wrongly decline to give the jury instruction, and PBT's argument therefore fails. Finally, as we noted in the discussion of the definition of probative similarity, any error with respect to factual copying is rendered harmless by the jury's finding on substantial similarity, such that we cannot say that it was probably responsible for an incorrect verdict.

## D.  Independent Creation

PBT also argues that the district court erred in instructing the jury as to the defendant's burden of proof in establishing independent creation. Specifically, PBT argues that the court instructed the jury that it must find independent creation by a

---

[11]   Under the inverse-relationship doctrine, a greater level of access reduces the level of probative similarity necessary to demonstrate factual similarity, at least to the extent that the plaintiff need not prove striking similarity when access is shown.  However, the degree of access never affects the ultimate burden to show substantial similarity.  Proof of access constitutes circumstantial evidence only of factual copying and is irrelevant to the determination of whether that copying is legally actionable (i.e., whether there is substantial similarity).  See 4 NIMMER § 13.03[D], at 13-81 ("Proof of access can logically aid in showing copying as a factual matter--added to the probative similarity that exists between two works, it can bolster the proof that one was in fact derived from the other. But access logically exerts no impact on copying as a legal matter; no matter how steeped in plaintiff's work defendant may have been, if the resulting product is non-actionable as a matter of law, then the absence of substantial similarity that must underlie every successful claim still dooms the infringement suit.").

23

preponderance of the evidence, whereas the allegedly correct
burden of proof is clear and convincing evidence.  On the issue
of independent creation, the court charged the jury:

> If you conclude that factual copying did occur, that is
> that Juvenile/CMR copied parts of Jubilee's song <u>Back
> That Ass Up</u>, the defendants may still rebut PBT's
> claims that Juvenile copied D.J. Jubilee's song by
> introducing evidence that Juvenile or CMR independently
> created Juvenile's song.  If defendants offer evidence
> of independent creation, PBT has the burden of proving
> that the defendants in fact copied the protected
> material.

This instruction is silent as to whether the burden of proof must
be met by a preponderance of the evidence or by clear and
convincing evidence.  However, the special verdict form asked:
"Has CMR/Juvenile proved by a preponderance of the evidence that
CMR/Juvenile independently created the song <u>Back That Azz Up</u>?"

     The jury instruction on independent creation did not
constitute plain error.  First, it cannot be considered an
obviously incorrect statement of the law.  PBT points to no Fifth
Circuit opinion, and in fact none exists, stating that a
defendant must prove independent creation by clear and convincing
evidence.  The only circuit opinion PBT cites is <u>Overman v.
Loesser</u>, 205 F.2d 521 (9th Cir. 1953).  The Ninth Circuit,
however, has expressly rejected an interpretation of <u>Overman</u> that
would require independent creation to be proven by clear and
convincing evidence.  <u>Granite Music Corp. v. United Artists
Corp.</u>, 532 F.2d 718, 723-24 (9th Cir. 1976).  A defendant need

24

only prove independent creation by a preponderance of the
evidence to rebut the presumption of factual copying that arises
from a plaintiff's evidence of access and probative similarity.
See id. Thus, there was no legal error.

Moreover, the district court's instruction on independent
creation did not likely result in an incorrect verdict because a
defendant need only prove independent creation if the plaintiff
successfully establishes factual copying. Here, the jury
determined that Juvenile did not factually copy Jubilee's song
when it found that the two songs were not probatively similar.
In addition, the jury's finding on substantial similarity also
would have precluded PBT from recovering regardless of the jury's
finding on independent creation. Thus, PBT's argument fails
under the plain error standard.

**E.  Substantial Similarity**

PBT's last complaint regarding jury instructions relates to
the district court's instruction on the definition of
"substantially similar." The jury was instructed that:

Two works are substantially similar if the expression
of ideas in the plaintiff's copyrighted work and the
expression of ideas in the defendant's work that are
shared are substantially similar. The test for
expression of ideas is whether the intended audience
would find the total concept and feel of the two songs
to be substantially similar.

PBT complains that this instruction inadequately explains to the
jury the meaning of substantial similarity and is merely

25

tautological, essentially stating nothing more than that two works are substantially similar if they are substantially similar. Furthermore, PBT argues that the instruction erroneously misleads the jury to conclude that they must determine whether the whole of the two works are substantially similar. Substantial similarity, PBT asserts, necessitates only that parts of the songs are similar and that the similar parts are qualitatively so important that the copying should be legally actionable.[12]

---

[12] The proposition that substantial similarity must take into account the qualitative importance of the copied material to the plaintiff's work finds considerable support in other circuits' jurisprudence. See, e.g., Newton v. Diamond, 349 F.3d 591, 596 (9th Cir. 2003) ("The substantiality of the similarity is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole."); King v. Innovation Books, 976 F.2d 824, 829–30 (2d Cir. 1992); Baxter v. MCA, Inc., 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity."). As NIMMER explains:

The question in each case is whether the similarity relates to matter that constitutes a substantial portion of plaintiff's work--not whether such material constitutes a substantial portion of defendant's work. The quantitative relation of similar material to the total material contained in plaintiff's work is certainly of importance. However, even if the similar material is quantitatively small, if it is qualitatively important, the trier of fact may properly find substantial similarity. . . . The trier must ultimately determine the importance of that material that is common to both parties' works. . . . Even in a musical composition, ordinarily, similarity must be found in more than a brief and commonplace musical sequence. . . . Although it could be safely said that

26

Addressing PBT's latter argument first, we note that the jury instruction, carefully parsed, did not unfairly suggest that the jury must compare the two works as a whole to determine if there is overall similarity between the two songs.  The instruction states that the "[t]wo works are substantially similar if the expression of ideas in the plaintiff's copyrighted work and the expression of ideas in the defendant's work <u>that are shared</u> are substantially similar." (emphasis added).  The phrase "that are shared" correctly indicates that the jury should compare the parts of the two songs that are similar in determining substantial similarity.  We note that the instruction given tracks the language suggested in Fifth Circuit opinions. See <u>Creations Unlimited, Inc.</u>, 112 F.3d at 816; <u>see also</u> <u>Bridgmon</u>, 325 F.3d at 576.  In <u>Creations Unlimited</u>, we stated: "To determine whether an instance of copying is <u>legally</u>

---

a similarity limited to a single note never suffices, the superstition among many musicians that the copying of three bars from a musical work can never constitute an infringement is, of course, without foundation. . . . The practice of digitally sampling prior music to use in a new composition should not be subject to any special analysis: to the extent that the resulting product is substantially similar to the sampled original, liability should result.  The fact that the sampled material is played throughout <u>defendant's</u> song cannot establish liability, if that snippet constitutes an insubstantial portion of <u>plaintiff's</u> composition.

4 NIMMER § 13.03[A][2], at 13-47-50.  District courts in this circuit have also adopted this line of reasoning.  <u>See R. Ready Prods., Inc. v. Cantrell</u>, 85 F. Supp. 2d 672, 683 (S.D. Tex. 2000).

actionable, a side-by-side comparison must be made between the
original and the copy to determine whether a layman would view
the two works as 'substantially similar.'"[13]  112 F.3d at 816.
Thus, whether two works are substantially similar is a question
for the jury itself to determine by examining the actual works in
question.  See id.  Here, the jury heard the two songs and made a
determination that they were not substantially similar.  Given
the parallel between the jury instructions and the language in
these cases, the jury instruction was not error.

When we look at the evidence presented to the jury, the
verdict may be explained by the possibility that the jury
rejected PBT's argument that the phrase "Back That Ass Up" was

---

[13]    The Ninth Circuit applies a two-part test to
determining substantial similarity.  See, e.g., Three Boys Music
Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000).  The first
part of the test, the extrinsic test, determines if there are
concrete similarities between two works based on objective
criteria.  The second part, the intrinsic test, involves a
subjective determination by the jury.  The Ninth Circuit,
however, does not differentiate between probative and substantial
similarity, and the two-part test, as applied in that circuit,
therefore does not parallel our jurisprudence.  The test
articulated in Creations Unlimited is similar to the Ninth
Circuit's intrinsic test, which is "subjective and asks whether
the ordinary, reasonable person would find the total concept and
feel of the works to be substantially similar."  Three Boys Music
Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000) (internal
quotation marks omitted); see also Taylor Corp. v. Four Seasons
Greeting Cards, LLC, 315 F.3d 1039, 1042-43 (8th Cir. 2003)
(applying intrinsic test); Cavalier v. Random House, Inc., 297
F.3d 815, 822 (9th Cir. 2002) ("The intrinsic test is a
subjective comparison that focuses on whether the ordinary,
reasonable audience would find the works substantially similar in
the total concept and feel of the works." (internal quotation
marks omitted)).

the qualitatively most important part (or "hook") of Jubilee's song.  That phrase recurred only a few times in Jubilee's song, which is over seven minutes long.[14]  Thus, the jury may have believed that, as the defendants argued, the hook was the sampling from the Jackson Five's song <u>I Want You Back</u>,[15] and that belief would explain why the jury determined that the songs are not substantially similar.  Accordingly, we cannot say that the jury instruction, even if it had been erroneous, probably resulted in an incorrect verdict.

Finally, the jury found that Jubilee did not establish a circumstantial showing of factual copying because the songs were not probatively similar and that Juvenile independently created <u>Back That Azz Up</u>.  Thus, PBT failed to prove factual copying, and PBT could not have prevailed on its copyright infringement claim, regardless of whether the two songs are substantially similar.[16]

---

[14]   PBT also concedes that song titles are not copyrightable and therefore could not be considered by the jury in the substantial similarity determination.  Accordingly, the jury was instructed to disregard the similarity between the titles in deciding the question of substantial similarity.

[15]   As we discuss below, the defendants offered evidence that the sampling of the Jackson Five constituted a significant portion of <u>Back That Ass Up</u> and was potentially the most memorable part of the song.

[16]   We pause here to address an erroneous criticism, urged at oral argument, of our logic in resolving PBT's jury-instruction challenges--namely, that we failed to account for the cumulative effect of the asserted errors.  With respect to each purported error in the jury instructions, this court has reasoned that the particular alleged error is not plain because, inter

## IV.   Evidentiary Rulings

### A.   Standard of Review

We review the district court's evidentiary rulings for an

abuse of discretion.   <u>Kainda v. Gulf Coast Med. Personnel, LP</u>,

363 F.3d 568, 581 (5th Cir. 2004).   "An error in the exclusion of

evidence is not grounds for reversal unless substantial rights

are affected or unless the affirmance is inconsistent with

substantial justice."   <u>Reddin v. Robinson Prop. Group Ltd P'ship</u>,

239 F.3d 756, 759 (5th Cir. 2001).

### B.   The Big Easy Mailer

PBT argues that the district court abused its discretion by

excluding from evidence a promotional mailer circulated by Big

---

alia, it did not probably result in an incorrect verdict.  More
specifically, we noted that the jury found against PBT on other
grounds on which PBT would have had to prevail in order to
succeed on its infringement claim (i.e., error on probative
similarity is harmless because the jury found independent
creation and no substantial similarity; error on independent
creation is harmless because the jury found no substantial
similarity; and error on substantial similarity is harmless
because the jury found independent creation).  None of our
findings, however, relies exclusively on the fact that the jury
found against PBT on other elements of an infringement action,
and this court would find no plain error with respect to each
challenged instruction regardless of the jury's other findings.
PBT urges this court to consider the jury instruction errors
cumulatively, but "[a]bsent any particularized error, there can
be no cumulative error."  <u>Williams v. Drake</u>, 146 F.3d 44, 49 (1st
Cir. 1998).  Furthermore, we note that PBT would have to prevail
on nearly all of its challenges to demonstrate plain error
because if the jury's finding against PBT on any one necessary
element (probative similarity, independent creation, or
substantial similarity) stands, then PBT could not have recovered
and the error thus would not probably have led to an incorrect
verdict.

Easy (the "Big Easy Mailer"), the now-dissolved former
distributer of 400 DEGREEZ. The Big Easy Mailer, PBT claims,
proves that Juvenile composed <u>Back That Azz Up</u> after he heard
Jubilee's <u>Back That Ass Up</u> because it lists ten songs on 400
DEGREEZ but does not include <u>Back That Azz Up</u>. PBT contends that
this document, in combination with two other documents that show
400 DEGREEZ was being re-released, proves that 400 DEGREEZ was
originally released without the song <u>Back That Azz Up</u>. Thus, PBT
argues, the Big Easy Mailer would have rebutted Juvenile's claim
that he recorded <u>Back That Azz Up</u> before ever hearing Jubilee's
song.[17]

The district court properly excluded the Big Easy Mailer
because it was both an unauthenticated document and hearsay not
within the business records exception. The only witnesses that
PBT produced who could testify with respect to the Big Easy
Mailer were Kenneth Taylor, a former employee of Big Easy who
worked as a telephone sales agent, and Earl Mackie, the founder
of PBT who received the Big Easy Mailer in the mail. In his
deposition, Taylor indicated that he was familiar with the basic
process of creating mailers (or one-sheets), which are sent to
retail record stores to solicit sales for new products. However,
he stated that he never worked in any capacity related to the

---

[17]   PBT offered no witness who could testify to ever seeing
or hearing an earlier version of 400 DEGREEZ that did not contain
<u>Back That Azz Up</u>.

creation of mailers at Big Easy, and he had no personal knowledge whatsoever with respect to the Big Easy Mailer. Taylor also admitted that he could not say whether Big Easy created the mailer or if someone else had created it. Mackie could testify only that he received the Big Easy Mailer in the mail. None of this testimony establishes that the Big Easy Mailer is a document that was created by Big Easy or that it had any connection with Juvenile or CMR, which is what PBT claims the document purports to be. Thus, the district court did not abuse its discretion in finding that the Big Easy Mailer was not properly authenticated. See FED. R. EVID. 901.

Furthermore, PBT sought to introduce the Big Easy Mailer to prove the truth of the matter asserted in the mailer: that Back That Azz Up was not included in an earlier release of 400 DEGREEZ. This was hearsay under FED. R. EVID. 801 and was excluded under FED. R. EVID. 802. PBT argues that the Big Easy Mailer falls within the business records exception to the hearsay rule. See FED. R. EVID. 803(6). "Rule 803(6) provides that [a]ny person in a position to attest to the authenticity of the records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records." New Orleans Cold Storage & Warehouse Co., Ltd. v. N.L.R.B., 201 F.3d 592, 601 n.9 (5th Cir. 2000)

(internal quotation marks omitted) (alteration in original).

However, as we have discussed, PBT offered no witness that could attest to the authenticity of the Big Easy Mailer, and the foundation for Rule 803(6) was therefore lacking. For example, no witness could establish that the mailer was "made at or near the time by, or from information transmitted by, a person with knowledge." FED. R. EVID. 803(6); see also Theriot v. Bay Drilling Corp., 783 F.2d 527, 533 (5th Cir. 1986) (applying Rule 803(6)). Furthermore, PBT points to no indicia of trustworthiness relating to the Big Easy Mailer that might justify a more liberal application of Rule 803(6). See United States v. Morrow, 177 F.3d 272, 295 (5th Cir. 1999) (per curiam) ("Rule 803(6) turns on the reliability or trustworthiness of the records."); United States v. Duncan, 919 F.2d 981, 986 (5th Cir. 1990) ("The district court has great latitude on the issue of trustworthiness."); Miss. River Grain Elevator, Inc. v. Bartlett & Co., Grain, 659 F.2d 1314, 1318-19 (5th Cir. 1981). Accordingly, the district court did not abuse its discretion in excluding the Big Easy Mailer.

## C. **Expert Witness Testimony**

PBT next complains that the district court erred by quashing the subpoena of John Joyce, one of PBT's expert witnesses, and by excluding Joyce's testimony because he refused to be deposed. Gayle Murchinson, who had been retained as an expert for the

33

defendants, and Joyce are both professors at Tulane University.
Joyce is tenured; Murchinson is not.  When Joyce learned that he
would serve on the committee that would evaluate Murchinson for
tenure, he decided to withdraw as an expert witness because he
believed that a conflict of interest existed.  Accordingly, Joyce
did not appear at his scheduled deposition.  Both PBT and the
defendants subpoenaed Joyce for deposition, but Joyce retained
his own counsel and moved to quash the subpoena.  The magistrate
judge granted Joyce's motion, and the district court affirmed.
The district court subsequently granted the defendants' motion in
limine to exclude Joyce's testimony because he refused to be
deposed.  PBT appeals the district court's decision to affirm the
grant of Joyce's motion to quash and the defendant's motion to
exclude.

    We review the decision to quash a subpoena for abuse of
discretion.  In re Dennis, 330 F.3d 696, 704 (5th Cir. 2003);
Tiberi v. CIGNA Ins. Co., 40 F.3d 110, 112 & n.4 (5th Cir. 1994).
FED. R. CIV. P. 45 provides that a court shall quash (or modify) a
subpoena if it "subjects a person to undue burden."  FED. R. CIV.
P. 45(c)(3)(A)(iv).  Whether a subpoena subjects a witness to
undue burden generally raises a question of the subpoena's
reasonableness, which "requires a court to balance the interests
served by demanding compliance with the subpoena against the
interests furthered by quashing it."  9A CHARLES ALAN WRIGHT & ARTHUR

34

R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2463 (2d ed. 1995).

"[T]his balance of the subpoena's benefits and burdens calls upon the court to consider whether the information is necessary and unavailable from any other source."  Id.

Here, the district court did not abuse its broad discretion in determining that the subpoena subjected Joyce to undue burden because of his believed conflict of interest.  PBT has not shown that the information that Joyce would have conveyed to the jury was so necessary that it warranted his coerced participation in the trial.  Joyce had no personal knowledge relevant to the case and was subpoenaed only to give his expert opinion.  Furthermore, the information that Joyce allegedly would have imparted to the jury was not only available from other sources, it was actually provided at trial by PBT's other expert witness.  Cf. Kaufman v. Edelstein, 539 F.2d 811, 818-22 (2d Cir. 1976) (holding that expert witnesses may be compelled to testify when their testimony is unavailable from any other source and vital to the trial).  As PBT explains it its brief on the attorney's fee issue:

> The district court's consideration of the testimony of PBT's expert, Harold Battiste, in evaluating PBT's claim is clearly understandable.  Mr. Battiste, one of the most knowledgeable, seasoned, and widely acclaimed musician/conductor/composers ever to come from the Southern United States staked his reputation on the sufficiency of PBT's claims by offering his well-documented expertise.  He explained that the musical phrases in question are substantially similar, and are exact in purpose, form, and importance in both songs.

In light of these factors, the district court properly decided

35

that the burden on Joyce was undue.[18]

For similar reasons, the district court did not abuse its discretion in granting the defendants' motion in limine to exclude Joyce's testimony. The defendants were unable to depose Joyce before trial, and it seems likely that Joyce would have opposed any attempt to call him as a witness. Cf. Barrett v. Atl. Richfield Co., 95 F.3d 375, 379-82 (5th Cir. 1996) (barring expert testimony for failure to comply with scheduling order and appear at depositions). Furthermore, PBT produced another qualified expert witness, whose testimony largely replicated what Joyce would have offered, thus negating any claim PBT might have that its substantial rights were affected. See Polythane Sys., Inc. v. Marina Ventures, Int'l, Ltd., 993 F.2d 1201, 1208 (5th Cir. 1993); Carter v. Massey-Ferguson, Inc., 716 F.2d 344, 349 (5th Cir. 1983) (holding that exclusion of evidence did not affect party's substantial rights when other, admitted evidence served the same function). Accordingly, the district court did not err with respect to Joyce's testimony.

---

[18] Our conclusion is also guided by FED. R. CIV. P. 45(c)(3)(B)(ii), which provides that a district court may quash a subpoena if it "requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party . . . ." Although it is debatable whether this subsection of Rule 45 directly applies (because Joyce was originally a retained witness but then decided not to testify), it is clear that the Rules furnish district courts with the discretion not to compel unwilling experts to testify as to their opinions under certain circumstances.

**D.  Music Critics' Articles and Testimony**

PBT also contends that the district court committed reversible error by excluding, as hearsay, several newspaper articles that purported to find strong similarities between Juvenile and Jubilee's songs.  PBT argues that the articles are not hearsay because they were not offered to prove that the two songs are substantially similar (i.e., the matter asserted). Rather, PBT claims, the articles were only offered to show that "numerous members of the intended audience believed that the two songs were substantially similar."

The district court did not abuse its discretion in excluding these newspaper articles.  As we have noted previously, the question of substantial similarity is typically left to the fact finders' own impressions.  See Bridgmon, 325 F.3d at 576; Three Boys Music Corp., 212 F.3d at 485; King v. Ames, 179 F.3d 370, 376 (5th Cir. 1999).  Thus, a court could reasonably conclude that the views of persons not on the jury and not qualified to give an expert opinion on substantial similarity should not be admitted.

Furthermore, the district court did not abuse its discretion in excluding the testimony of the authors of these articles. While such testimony would have cured a potential hearsay problem with the articles, it would not have made the evidence any more probative.  In addition, the district court acted within its

37

broad discretion by excluding the testimony on the grounds that
PBT failed to include the witnesses on its pre-trial witness
lists and that the witnesses had not been deposed before trial.
See, e.g., Singer v. City of Waco, 324 F.3d 813, 822 (5th Cir.
2003).

**E.   Evidence of PBT's Own Sampling**

PBT's final complaint regarding the district court's
evidentiary rulings is that the court abused its discretion by
admitting the defendants' evidence regarding the extent to which
Jubilee's Back That Ass Up sampled music from a Jackson Five
song, I Want You Back.  In its motion in limine, PBT requested
that the court "preclude defendants from introducing any
documentary evidence or examining any witness on the subject of
PBT's use of the sound recordings or musical works of another in
connection with the creation of the music in its version of the
song Back That Ass Up."  The district court denied the motion.
At the beginning of trial, PBT renewed its objection regarding
"the use of the Michael Jackson unclean hands business," and
stated that it "object[s] to anything along those lines."  The
defendants argue that the evidence of sampling was properly
admitted for two purposes: (1) to establish an unclean hands
defense and (2) to refute PBT's claim that the phrase "back that
ass up" is the hook in Jubilee's song.  PBT argues that the
evidence was inadmissible under either theory and that the danger

38

of unfair prejudice substantially outweighed its probative value.
See FED. R. EVID. 403.

PBT is correct that the evidence was not admissible on the
ground that it established an unclean hands defense.  The unclean
hands doctrine is used to defeat an undeserving plaintiff's claim
for equitable relief against a defendant that he has injured.
See Mitchell Bros. Film Group v. Cinema Adult Theater, 604 F.2d
852, 863 (5th Cir. 1979) ("The alleged wrongdoing of the
plaintiff does not bar relief unless the defendant can show that
he has personally been injured by the plaintiff's conduct.").
Because the defendants could not show that they were personally
injured by PBT's sampling of the Jackson Five song, they had no
basis for invoking that sampling as the basis of an unclean hands
defense.  See Alcatel USA, Inc. v. DGI Techs., Inc., 166 F.3d
772, 796 (5th Cir. 1999).  Thus, the evidence should not have
been admitted on that ground.

However, the district court acted within its discretion in
admitting the evidence for the purposes of determining the hook
of Back That Ass Up.  As we have already discussed, a relevant
issue for the jury to consider was the qualitative importance of
the parts of Jubilee's song that are similar to Juvenile's song.
PBT claimed that the similarities between the two songs included
the very heart, or hook, of Jubilee's song.  To counter this
claim, the defendants were entitled to offer evidence that the

39

hook of Back That Ass Up was not the four word phrase but rather another element of the song--namely, the Jackson Five sampling. The evidence showed that the Jackson Five sampling recurred throughout a significant portion of Jubilee's song (including each time the phrase "back that ass up" was used) and that it was a recognizable part of the song. Cf. Santrayall v. Burrell, 993 F. Supp. 173, 176 (S.D.N.Y. 1998) (excluding evidence of sampling because it "comprise[d] only a very minor part of [the plaintiff's] song"). Henry Holden, a co-owner of PBT who added the Jackson Five sample to Back That Ass Up, admitted that he included the sample because it stayed in his mind. Further, the fact that the sample came from a Jackson Five song was relevant to the determination of the song's hook because the considerable popularity of the Jackson Five likely makes it more recognizable to the audience. PBT has not shown that the introduction of the fact that Back That Ass Up sampled a portion of the Jackson Five song created a risk of unfair prejudice that substantially outweighed this probative value. Accordingly, the district court did not abuse its discretion in deciding that the probative value of the sampling evidence outweighed any risk of unfair prejudice or confusion. See Campbell v. Keystone Aerial Surveys, Inc., 138 F.3d 996, 1004 (5th Cir. 1998) (noting that FED. R. EVID. 403 "is an extraordinary measure that should be used sparingly." (quoting United States v. Morris, 79 F.3d 409, 411 (5th Cir. 1996)).

PBT argues on appeal that the defendants could have introduced evidence that the Jackson Five material was the hook of <u>Back That Ass Up</u> without implying that the sampling was unauthorized.[19] PBT is correct that the fact that the sampling was unauthorized is not probative of the question of the song's hook and that such information may have had a prejudicial effect. In a more perfect world, the district court would have admitted the evidence of sampling but would have either prohibited the defendants from characterizing the sampling as unauthorized or given a limiting instruction concerning the purposes for which the jury could consider the evidence.[20] See <u>United States v. Sanders</u>, 343 F.3d 511, 518 (5th Cir. 2003) ("Under the Rule 403 standard, when the court issues a limiting instruction, it minimizes the danger of undue prejudice."). Regardless, any potential error here is insufficient to warrant reversal. The jury had before it more than ample evidence from which it could have found in favor of the defendants, even if it had never heard that the Jackson Five sampling was unauthorized. Thus, PBT's

_____

[19] In the district court proceedings, PBT never distinguished between admitting the evidence of sampling and allowing evidence that the sampling was unauthorized. Rather, PBT only requested that the district court exclude all evidence relating to sampling. The failure to raise this distinction probably resulted from the parties' focus on the unclean hands defense before and during trial.

[20] The district court, of course, would have had to reject the defendants' unclean hands defense in order to accept this limitation on the admission of sampling evidence.

41

substantial rights were not affected by the admission of the
evidence, and we therefore find no reversible error.

### V.  Attorney's Fees

The defendants separately appeal the denial of their
requests for attorney's fees.  Universal requested $323,121.25 in
fees, and CMR and Juvenile requested $263,040.  Of those, CMR and
Juvenile traced $39,456 of its fees to its successful LUPTA
counterclaim, for which LA. REV. STAT. 51:1409(A) mandates it
receives fees as the prevailing party.  The district court denied
the fee requests for the successful copyright defense and granted
CMR and Juvenile's request for the LUPTA fees at the markedly
reduced sum of $2,500.

This court reviews the district court's refusal to award
attorney's fees in a copyright infringement case for an abuse of
discretion.  Creations Unlimited, Inc., 112 F.3d at 817.
A trial court abuses its discretion in awarding or refusing to
award attorney's fees when its ruling is based on an erroneous
view of the law or a clearly erroneous assessment of the
evidence.  Sanmina Corp. v. BancTec USA, Inc., 94 Fed. Appx. 194,
196 n.10 (5th Cir. 2004).

Section 505 of the Copyright Act provides:  "In any civil
action under this title, the court in its discretion may allow
the recovery of full costs by or against any party other than the
United States or an officer thereof[;] [e]xcept as otherwise

42

provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505 (2000). As the district court below explicitly recognized, an award of attorney's fees to the prevailing party in a copyright action, although left to the trial court's discretion, "is the rule rather than the exception and should be awarded routinely." McGaughey v. Twentieth Century Fox Film Corp., 12 F.3d 62, 65 (5th Cir. 1994) (quoting Micromanipulator Co. v. Bough, 779 F.2d 255, 259 (5th Cir. 1985)). Noting that attorney's fees should be routinely awarded, the district court nevertheless exercised its discretion not to award such fees in this case.

After McGaughey was decided, the Supreme Court decided Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). In Fogerty, the Court rejected the Ninth Circuit's "dual" standard of assessing attorneys's fees under the Copyright Act, under which "prevailing plaintiffs are generally awarded attorney's fees as a matter of course, while prevailing defendants must show that the original suit was frivolous or brought in bad faith." 510 U.S. at 520-21. Instead, Fogerty adopted the Third Circuit's "'evenhanded' approach in which no distinction is made between prevailing plaintiffs and prevailing defendants." Id. at 521. The Supreme Court reasoned that this was the better rule:

> Because copyright law ultimately serves the purpose of
> enriching the general public through access to creative

43

> works, it is peculiarly important that the boundaries
> of copyright law be demarcated as clearly as possible.
> To that end, defendants who seek to advance a variety
> of meritorious copyright defenses should be encouraged
> to litigate them to the same extent that plaintiffs are
> encouraged to litigate meritorious claims of
> infringement.

Id. at 527.  However, the Court made clear that it was not

adopting the British Rule, under which prevailing parties--

whether plaintiffs or defendants--are always granted attorney's

fees.  See id. at 533 ("Petitioner argues that . . . both

prevailing plaintiffs and defendants should be awarded attorney's

fees as a matter of course, absent exceptional

circumstances. . . . [W]e reject this argument for the British

Rule.").  The Court reasoned that the language of § 505 that the

court "may" award fees "clearly connotes discretion" and that

Congress legislated the Copyright Act against the "strong

background of the American Rule."  Id.  Accordingly,

"[p]revailing plaintiffs and prevailing defendants are to be

treated alike, but attorney's fees are to be awarded to

prevailing parties only as a matter of the court's discretion."

Id. at 534; see also Hogan Sys., Inc. v. Cybresource Int'l, Inc.,

158 F.3d 319, 325 (5th Cir. 1998).[21]

---

[21]  In Hogan Systems, this court stated:

> [T]he case law of the [Fifth Circuit] is in accord with
> the Supreme Court's rule in Fogerty.  Hogan would have
> this court believe that the Fifth Circuit's
> "discretionary but routinely awarded" McGaughey
> standard for attorney's fees is the same as the British

The Fogerty Court noted that "[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified."  510 U.S. at 534 (internal quotation marks omitted).  However, the Court agreed that a non-exclusive list of factors may be used to guide the district court's discretion; this list includes "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[22]  Id. at 534 n.19 (internal quotation marks omitted).  The Fifth Circuit previously applied these factors to deny a successful copyright defendant's request for attorney's fees.  Creations Unlimited, Inc., 112 F.3d at 817 ("We see no abuse of discretion in the district court's rejection of the [defendants'] motion for attorney's fees.  The court properly applied the Lieb factors . . . before denying the [defendants'] motion . . . .").

Here, the district court set forth the standard described

---

Rule and thus has been rejected explicitly by the Supreme Court.  It is clear that this is not the case.  The language of Fogerty clearly allows for judicial discretion in determining whether attorney's fees should be awarded.  So does the McGaughey rule.

158 F.3d at 325.

[22]  The Third Circuit set forth these factors in Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986).

45

above, noting the text of § 505, the principle that fee awards--
although discretionary--are the rule rather than the exception
and should be awarded routinely, and that under <u>Fogerty</u> the
court's discretion is guided by the non-exclusive list of <u>Lieb</u>
factors. The court then determined that in this case, those
factors suggested that attorney's fees should not be awarded to
the defendants. Specifically, the court stated:

> In addition to presiding over the [five] day trial of
> this matter, the [c]ourt considered several complex and
> potentially dispositive pre-trial motions. Having
> gained an understanding of the applicable law and a
> thorough appreciation of PBT's claims, the [c]ourt does
> not feel that this litigation was frivolous,
> objectively unreasonable, or without proper motive.
> PBT had a renowned music expert to support its position
> even though the jury gave greater weight to the
> testimony of Defendants' expert. The [c]ourt is
> convinced that PBT's claims were brought in good faith.
> Therefore, an award of attorney's fees would not serve
> to deter future meritless litigation brought by other
> parties.

The defendants' claim that the district court applied the
wrong legal standard is incorrect. The Supreme Court has
explicitly approved of a district court considering frivolity and
motivation as two of the multiple factors in a non-exclusive list
may guide the court's discretion over attorney's fees in
copyright cases. <u>Fogerty</u>, 510 U.S. at 535 n.19. Thus, to the
extent that the defendants argue that the district court erred in
considering these factors at all, they are unquestionably wrong.
Second, to the extent that the defendants argue that the district
court erred because it considered <u>only</u> frivolity and bad faith,

46

they are equally wrong.  The district court did not focus solely

on whether the lawsuit was frivolous or brought in bad faith;

rather, the court expressly found that the claims were "not

objectively unreasonable," and it provided a reasonable

explanation for this finding.[23]  Furthermore, the district court

---

[23]  The defendants' argument that PBT's claim was per se
objectively unreasonable because the jury found in favor of the
defendants is without merit--to accept such an argument
necessarily would transform the discretionary rule into the
clearly rejected British Rule, under which a prevailing defendant
always recovers fees.  In order for the rule to remain
discretionary rather than mandatory, a district court must be
able, under certain circumstances, to refuse to award fees.
Furthermore, although the district court, when denying the
defendants' motion for summary judgment, noted that it doubted
that PBT would prevail at trial on the issue of whether the
phrase "back that ass up" was protectable under copyright laws,
the court later determined, after adjudicating a number of
substantive motions and hearing the full trial on the merits,
that PBT's claim was not objectively unreasonable and that it did
not warrant attorney's fees.

We note briefly a troubling aspect of Universal's brief to
this court.  After arguing that frivolity is not the appropriate
standard but rather that the court should consider the fact that
the defendants prevailed at trial, Universal states in its brief:
"The Universal Defendants prevailed on nearly every aspect of
PBT's claim.  When a plaintiff pursues claims without merit, the
'failure of the district court to award attorney fees and costs
to the prevailing party will, except under the most unusual
circumstances constitute an abuse of discretion.'" (emphasis
added) (quoting Diamond Star Bldg. Corp. v. Freed, 30 F.3d 503,
506 (4th Cir. 1994)).  Universal, however, omits critically
relevant language from Diamond Star.  The Fourth Circuit actually
wrote: "Indeed, when a party has pursued a patently frivolous
position, the failure of a district court to award attorney's
fees and costs to the prevailing party will, except under the
most unusual circumstances, constitute an abuse of discretion."
Diamond Star Bldg. Corp., 30 F.3d at 506 (emphasis added).  Given
Universal's own vehemence regarding the distinction between
prevailing on the merits and frivolity (much less patent
frivolity), this type of misrepresentation is unacceptable.

47

considered the possible effect, or lack thereof, that awarding
fees would have on deterring future meritless lawsuits, and it
determined that this is a rare case in which awarding fees is not
appropriate.  Finally, the defendants' assertion that the
district court improperly "might have been motivated by sympathy
for a small, locally-owned, family company" simply has no support
in the record.  Therefore, the district court did not abuse its
discretion in concluding that the defendants were not entitled to
attorney's fees under § 505 in this instance.

<h3 align="center">VI.  Conclusion</h3>

For the forgoing reasons, in No. 03-30625 we AFFIRM the
judgment of the district court in favor of the defendants; in No.
03-30702, we AFFIRM the district court's minute entry denying
defendants' motions for award of attorney's fees on the copyright
infringement claim.  All outstanding motions are denied.  Costs
in No. 03-30625 shall be borne by plaintiff; costs in No. 03-
30702 shall be borne by defendants.

48



**United States Court of Appeals**
FIFTH CIRCUIT
OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
CLERK

RECEIVED
JAN 1 0 2005
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
DEPUTY CLERK

600 CAMP STREET
NEW ORLEANS, LA 70130

January 10, 2005

Ms Loretta Whyte, Clerk
Eastern District of Louisiana, New Orleans
United States District Court
Room C-151
500 Poydras Street
New Orleans, LA 70130

     No. 03-30625 & 03-30702 Positive Black Talk v. Cash Money
Records
          USDC No.  02-CV-425-A

Enclosed, for the district court only, is a certified copy of the
judgment issued as the mandate.

Enclosed, for the district court only, is a copy of the court's
opinion.

Record/original papers/exhibits to be returned.

                    Sincerely,

                    CHARLES R. FULBRUGE III, Clerk

               By:  _Renee McDonough_____
                    Renee S. McDonough, Deputy Clerk
                    504-310-7673

cc: (letter only)
     Honorable Jay C Zainey
     Mr Nathan T Gisclair Jr
     Mr Thomas K Potter III
     Mr Bruce Victor Schewe

P.S. to Judge Zainey:  A copy of the opinion was sent to your
office via email the day it was filed.

MDT-1